IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MITCHELL E. BENGTSON,

                Plaintiff,

   v.

CHRISTEN A. CARLSON, ERIC P. CARLSON,
PETER CARLSON, JESSE ASHTON,
JENNIFER MCDONOUGH, DEPARTMENT OF
NATURAL RESOURCES, LOGAN HACKER, and
POLK COUNTY ZONING,

                Defendants.

OPINION AND ORDER

24-cv-235-wmc

---

MITCHELL E. BENGTSON,

                Plaintiff,

   v.

DEPARTMENT OF NATURAL RESOURCES,
JENNIFER MCDONOUGH, KYLE KOSIN,
JOSEPH MCMAHON, and MICHAEL MELGAARD,

                Defendants.

25-cv-368-wmc

---

Plaintiff Mitchell Bengtson has filed two separate lawsuits in this court seeking monetary relief related to six pending, civil enforcement actions initiated by defendant Wisconsin Department of Natural Resources ("DNR") in the Circuit Court for Polk County, Wisconsin, *State of Wisconsin v. Mitchell E. Bengtson*, Polk County Case Nos. 24FO31 through 24FO36 (filed January 17, 2024). In these state actions, plaintiff is charged with failing to obtain stormwater discharge, dredge, and fill permits, as well as failing to implement an erosion control plan for certain construction activities on his Polk County property. In response, on April 11, 2024, plaintiff filed Case No. 24-235 under

42 U.S.C. §§ 1983, 1985, and 1986, claiming that the following defendants all conspired to violate his rights under the Fourth and Fourteenth Amendments and state trespass and public records laws: DNR and three of its employees, Jesse Ashton, Peter Carlson, and Jennifer McDonough ("the state defendants"); the Polk County Zoning Department and its employee, Logan Hacker ("the county defendants"); and his neighbors, Christen and Eric Carlson. Specifically, he claims in the '235 case that: (1) DNR employees Jason Ashton and Peter Carlson trespassed on his private property on August 17, 2021, having gained access through Christen and Eric Carlson's neighboring property; (2) Polk County employee Hacker, acting for the County Zoning Department, trespassed on his property on August 31, 2021, and later failed to respond to plaintiff's requests that he identify the individuals who complained about him and participated in the search of his property; and (3) DNR employee McDonough concealed material facts from the state circuit court during the civil enforcement proceedings. ('235 case, dkt. #1.) Next, on May 8, 2025, plaintiff filed Case No. 25-368, separately claiming that the DNR, its employee McDonough, and three other DNR wardens -- defendants Kyle Kosin, Joseph McMahon, and Michael Melgaard -- obtained an invalid warrant to inspect his property on May 12, 2022, based on illegal searches of his property in August 2021 and McDonough's false statements to the state circuit court. ('368 case, dkt. #1.)

The county and state defendants in the '235 case subsequently filed a joint motion to dismiss and for judgment on the pleadings, asking this court to abstain from exercising jurisdiction over plaintiff's claims under *Younger v. Harris*, 401 U.S. 37 (1971), on the ground that resolution of plaintiff's alleged federal claims would interfere in the pending state court prosecutions. (Dkt. ##42 and 46.) Further, because defendants Eric and

Christen Carlson failed to appear, plead, or otherwise defend within the time allowed in the '235 case, the clerk's office granted plaintiff's motion to enter default against them on November 6, 2024, although this court reserved on whether to enter default judgment until resolving plaintiff's claims as to the other defendants. ('235 case, dkt. #37.) While DNR and its four employees have not yet been served in the newer '368 case, plaintiff's complaint in that case is also under review for potential jurisdictional issues. *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (Court has inherent authority "to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of their fee status."). Finally, plaintiff has filed a motion for substitution of judge ('368 case, dkt. #3), which the court construes as a request for recusal, albeit late.

      For the reasons explained below, I find recusal to be wholly unwarranted and abstention by this court to be required in *both* the '235 and '368 cases to avoid unduly interfering with the ongoing civil enforcement proceedings in state court. However, because plaintiff's claims for monetary relief in these cases may be time-barred after the enforcement actions have concluded, dismissal is not appropriate. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (stay rather than dismissal appropriate in applying *Younger* abstention to claims for monetary relief). Additionally, to the extent that *Younger* abstention does not apply to some of plaintiff's claims, the court will exercise its discretion to stay proceedings related to those claims for judicial efficiency. Accordingly, while the court will stay proceedings in both the '235 and '368 cases until the civil enforcement actions in state court have ended and effectively close those cases during the stay, plaintiff may move to reopen after the conclusion of his state enforcement proceedings, including any appeals.

3

BACKGROUND[1]

On August 17, 2021, plaintiff Mitchell Bengtson was notified by his hired hand, Michael Cotts, that people were trespassing on his property on Highway W in Fredrick, Wisconsin, which is posted with no trespassing signs. Cotts yelled at the individuals, who then retreated to the neighboring residence of defendants Eric and Christen Carlson. As he followed the individuals to the edge of the property, a woman yelled to Cotts that a permit was needed for what was happening on plaintiff's property. Plaintiff later learned from a DNR notice received on March 14, 2024, that two DNR wardens, defendants Jason Ashton and Peter Carlson, had entered his property on August 17, 2021, for a site inspection and to take photographs. Plaintiff alleges that they neither had a warrant nor permission to inspect his property.

On August 31, 2021, defendant Logan Hacker allegedly conducted a second inspection of plaintiff's property for the Polk County Zoning Department, again without a warrant or plaintiff's permission. In addition, Hacker has repeatedly denied or ignored plaintiff's requests for the names of the individuals who filed a complaint with the zoning department or participated in the August 31 search of his property.

On April 26, 2022, defendant Jennifer McDonough, also a DNR employee, emailed a timeline of events related to the inspection of plaintiff's property to the district attorney's office as support for an inspection warrant, which was issued on May 12, 2022. ('235 case

---

[1] This factual summary is taken from plaintiff's allegations in his federal complaints, construing them liberally and making all reasonable inferences in his favor, except as wholly contradicted by the undisputed, factual record, including events derived from the state civil enforcement docket of which this court takes judicial notice. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

4

dkt. #1-4.) Plaintiff further alleges that this timeline is a false representation of the relevant events. (*Id.*)

State court records available online confirm that Polk County Case Nos. 24FO31 through 24FO36 were filed on January 17, 2024, citing the following violations of Wis. Adm. Code Ch. NR 200 on plaintiff's Polk County property: failure to obtain construction site stormwater discharge permit at least 14 days before construction; failure to implement or maintain erosion control during period of permit coverage; failure to develop an appropriate site specific erosion control plan; construction over navigable water without a permit; and two counts of discharge of dredged or fill material in wetland without a permit. *See State v. Bengtson*, Case Nos. 24FO31 through 24FO36 (available online at https://wcca.wicourts.gov/).

On April 1, 2024, plaintiff filed two notices in circuit court: (1) notice of his intent to file a lawsuit in federal court against the state and county defendants, along with the Carlsons, for criminal trespass, and against Hacker for extortion and concealing material facts related to his refusal to produce the names of the individuals who complained about plaintiff or participated in the search of plaintiff's property (dkt. #1-3); and (2) notice of McDonough's alleged perjury and falsification of information in the court record ('235 dkt. #1-4; *see also State v. Bengtson*, Case Nos. 24FO31 through 24FO36 (available online at https://wcca.wicourts.gov/).) Although now represented by an attorney, plaintiff failed to appear at two status conferences in state court since filing these two notices. (*Id.*) While a final pre-trial conference had been set in the state court actions for June 27, 2025, and a jury trial for July 16-17, 2025, the circuit court appears to have granted a motion for continuance without yet scheduling a new date for the jury trial. (*Id.*)

5

Plaintiff subsequently filed these two lawsuits in this federal court. In the '235 case, he seeks to assert constitutional and state law claims against: defendants Peter Carlson, Ashton, and Hacker for searching his private property on August 17 and 31, 2021, without a valid warrant or permission; defendant Hacker for failing to respond to plaintiff's requests for public records and information; defendant McDonough for concealing material facts to justify the May 2022 inspection warrant; and defendants Eric and Christen Carlson for conspiring with these state and county defendants to trespass on his property. In the '368 case, plaintiff further challenges the validity of the separate May 2022 inspection warrant. Finally, plaintiff claims in both Case Nos. '235 and '368 that the DNR's entire case against him is inadmissible because it is based on evidence gathered during illegal searches of his property and a falsified timeline.

OPINION

I.  **Recusal Motion**

Plaintiff contends in his motion for recusal that it would be a conflict of interest for me to preside over his second lawsuit because I already am presiding over his first lawsuit, and he would like to keep the cases separate. However, the fact that I am the presiding judge in both of plaintiff's civil suits in this court does not warrant recusal as plaintiff has neither alleged nor established that I am in any way biased against him. *See* 28 U.S.C. § 455(a) and (b)(1) (judges must disqualify themselves in proceedings in which they have personal bias or prejudice and impartiality might be reasonably questioned); *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior

6

proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). Indeed, not only have I indicated *no* basis or partiality, nor am aware of any, but consolidation of related cases before the same judge is a common practice in this and other federal courts for their "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1. Accordingly, plaintiff's motion will be denied.

## II.   Abstention Motion

The state and county defendants in the '235 case have asked this court to abstain from exercising jurisdiction over the claims against them because plaintiff is seeking to interfere with pending state court civil enforcement actions.[2] And even though the '368 case is in its very initial stages, as the defendants in that case have not yet been served, plaintiff's allegations in the state court actions pose an abstention obstacle to this new lawsuit as well. *See Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (court may raise *Younger* and other abstention doctrines *sua sponte*).

The United States Supreme Court has identified certain circumstances where federal courts *must* abstain from deciding cases that are otherwise within their jurisdiction in deference to the "underlying principles of equity, comity, and federalism foundational to our federal constitutional structure." *J.B. v. Woodard*, 997 F.3d 714, 721-22 (7th Cir.

---

[2] While defendants bring their motion under Rules 12(b)(6) and 12(c), "district courts in this circuit have determined that [a motion to dismiss on *Younger* abstention grounds] is best construed as a motion to dismiss under [Rule] 12(b)(1) for lack of subject matter jurisdiction." *Berrada Properties Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 754 (E.D. Wis. 2022) (summarizing district court cases and citing *Majors v. Engelbrecht*, 149 F.3d 709, 711-12 (7th Cir. 1998), as an example of Seventh Circuit's implicit acceptance of district court's discretion to construe motion to dismiss on abstention grounds under either Rule 12(b)(1) or 12(b)(6)).

7

2021). Moreover, a federal court "may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Id*. (quoting *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010)). For the reasons explained below, the *Younger* abstention doctrine deprives this court of jurisdiction over plaintiff's claims in both the '235 and '368 cases until at least these state court proceedings reach a final resolution.

To begin, a federal court must abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings implicating important state interests. *Younger*, 401 U.S. at 45; *SKS*, 619 F.3d at 677; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."). "Situations in which *Younger* abstention is appropriate include those in which there is an ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist." *Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017) (internal citation omitted); *see also Ghelf v. Town of Wheatland*, 132 F.4th 456, 470 (7th Cir. 2025) (abstention appropriate when there are pending state judicial proceedings specifically related to plaintiff's federal claims). Still, if *Younger* applies and the plaintiff seeks damages in federal court, as he does in both Case Nos. '235 and '368, courts must stay the case, rather than dismiss it. *See Simpson v. Rowan*, 73 F.3d 134, 137-38 (7th Cir. 1995); *Gakuba*, 711 F.3d at 753.

Further, the conditions for abstention under *Younger* are satisfied in both the '235 and '368 cases. The ongoing civil enforcement actions filed against plaintiff in state court are quasi-criminal and judicial in nature and involve important state interests. *See Sprint Commc'ns, Inc. v.* Jacobs, 571 U.S. 69, 73 (2013) (civil enforcement proceedings akin to criminal prosecutions considered "circumstances fitting within the *Younger* doctrine"); *Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 666 (7th Cir. 2007) ("There is no question that the quasi-criminal prosecution of the violation of an ordinance . . . is an adequate state proceeding for the purposes of *Younger*."); *Engelbrecht*, 149 F.3d at 712 ("[A]dministrative proceedings are 'judicial in nature' when they are coercive -- i.e., state enforcement proceedings."). Specifically here, plaintiff has been charged with and is being prosecuted by the Polk County District Attorney's Office for six different violations of Wisconsin's pollutant discharge regulations that require "permits for the lawful discharge of any pollutant in to the waters of the state." Wis. Admin. Code NR § 200.01; *see also Adams v. State Livestock Facilities Siting Rev. Bd.*, 2012 WI 85, ¶ 51, 342 Wis. 2d 444, 473, 820 N.W.2d 404, 418 (identifying Chapter NR 200 as one of several sections of the administrative code "designed to ensure the protection of Wisconsin's waters"). In addition, plaintiff has the opportunity to raise his constitutional challenges in state court and appears to have done so through the notices he filed in the Polk County Circuit Court on April 4, 2024. *See Terry v. Kolski*, 78 Wis. 2d 475, 496, 254 N.W.2d 704, 712 (1977) ("[C]ourts of this state have jurisdiction to hear and decide sec. 1983 cases."); *Engelbrecht*, 149 F.3d at 713 (subsequent judicial review in state court constitutes sufficient opportunity to raise constitutional challenges).

9

Nevertheless, plaintiff contends that he filed his first lawsuit (the '235 case) in order to challenge defendants' alleged criminal trespasses on his property on August 17 and 31, 2021, within the three-year statute of limitations period (Pl.'s Resp. Br., '235 case, dkt. #49, at 6), and his second lawsuit (the '368 case) to challenge the validity of the May 12, 2022, inspection warrant, which he claims was falsely obtained based on defendants' criminal trespasses on his property on August 17 and 31, 2021. (*Id*. at 7; '368 case, dkt. #1, at 4.) However, plaintiff's allegations in both cases only serve to underscore that he is seeking to bring claims in this court challenging the basis of the state charges against him, as well as the ongoing civil enforcement proceedings, neither of which is he allowed to do absent exceptional circumstances, which are not present here. In particular, adjudication of plaintiff's claims related to the allegedly illegal searches of his property and submission of false information to the court would unduly "interfere with his state-court proceedings" about those same events and "involve constitutional issues that may be litigated during the course of his" state civil enforcement actions. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (finding same in civil-rights lawsuit against law enforcement personnel and others who participated in criminal investigation of plaintiff); *Engelbrecht*, 149 F.3d at 714 ("[A] federal damages suit, although not interfering with the state proceeding to the same degree as an injunction, could beat the state action to judgment and either undermine, *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir.1995), or preclude, *Deakins v. Monaghan*, 484 U.S. 193, 208-09 (1988) (White, J., concurring), the State's consideration of some issues.").

While it is less clear whether *Younger* abstention applies to what plaintiff styles as a "records claim" against Hacker for failing to produce certain information that plaintiff

requested about the August 2021 searches, district courts have broad discretion to stay proceedings before it for reasons of judicial efficiency. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); Fed. R. Civ. P. 1. When exercising that discretion, courts typically consider four factors: (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice the non-moving party; (3) whether a stay will simplify the issues and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court. *Grice Eng'g Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (internal citations omitted). These factors weigh in favor of granting a stay here. First, the '235 case has not proceeded past the pleading stage, and the court discerns no unfair prejudice to plaintiff if the state cases are resolved before proceeding with *any* claim he may seek to bring concerning the August 2021 searches that led to the state charges against him. Second, those civil enforcement actions will likely resolve important, threshold questions that could significantly narrow the scope of the issues raised by plaintiff before this court. Third, and finally, plaintiff's ability to state a claim against Hacker for a violation of Wisconsin's open records law, Wis. Stat. §§ 19.35-36, is dubious, as a federal court may not order a state official to comply with state law. *See Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988) (applying this principle to Wisconsin's open records law).

Accordingly, the court will stay all proceedings in both the '235 and '368 cases and abstain from deciding plaintiff's claims until the state court proceedings are final, including any appeals. In the meantime, the court will administratively close both cases. If plaintiff wishes to reopen one or both of his federal cases after the state proceedings have ended, he must file a written notice with this court within **30 days** of the conclusion of the state

enforcement actions. If plaintiff does not file his notice(s) within that timeframe, his case(s) will be deemed dismissed without prejudice.

ORDER

IT IS ORDERED that:

1. Plaintiff Mitchell Bengtson's motion for recusal in Case No. 25-368 (dkt. #3) is DENIED.

2. The motion for judgment on the pleadings and motion to dismiss filed by the county defendants and joined by the state defendants in Case No. 24-235 (dkt. #46) is GRANTED IN PART and DENIED IN PART as outlined in this order.

3. The court will ABSTAIN from exercising jurisdiction in the '235 and '368 cases pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, as well as its inherent power to stay civil proceedings, and STAY both cases pending final resolution of plaintiff's state court proceedings, including any appeals.

4. The clerk of court is directed to close Case Nos. 24-235 and 25-368.

5. Plaintiff shall have 30 days after the conclusion of the state enforcement actions, including any appeals, to notify the court in writing of his request to reopen one or both of his federal cases. If plaintiff does not file his notice(s) within that timeframe, his case(s) will be deemed dismissed without prejudice.

Entered this 4th day of August, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge